No. 23-8020

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

SIGNET BUILDERS, INC.,

Petitioner-Defendant,

v.

Jose Ageo LUNA VANEGAS,

Respondent-Plaintiff.

**From the United States District Court
for the Western District of Wisconsin**
No. 3:21-cv-00054-jdp
The Honorable James D. Peterson, United States District Judge.

---

## ANSWER IN OPPOSITION TO SIGNET BUILDERS' PETITION FOR PERMISSION TO APPEAL

---

Jennifer J. Zimmermann
(COUNSEL OF RECORD)
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Edward J. Tuddenham
42 Ave. Bosque
Paris, France
+33 6 84 79 89 30
edwardtuddenham@gmail.com

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA, 52240
(319)351-6570, Ext.1512
lgaynor@iowalaw.org

*Counsel for Respondent-Plaintiff Jose Ageo LUNA VANEGAS*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………...ii

INTRODUCTION…………………………………………………….....1

FACTUAL BACKGROUND……………………………………...…………1

ARGUMENT…………………………………………………..………3

    I.     SIGNET'S PETITION SHOULD BE DISMISSED
            BECAUSE IT DOES NOT SATISFY ALL 28 U.S.C **§** 1292
            (B) CRITERIA AND FOR OTHER PRUDENTIAL
            REASONS ………………………………………………3

            A. Standard of Review………………………………..…3

            B. The Question Identified is not Controlling…..………..3

            C. The Order at Issue Here is not Contestable…..………7

            D. An Interlocutory Appeal Will Delay Rather than
               Advance the Litigation…………….………………..10

            E. Signet's Petition to Appeal the Bristol-Myers issue is
               Premature in ways which make it Imprudent for this
               Court to Allow Appeal at this Time……………......14

    II.    IF SIGNET'S PETITION IS GRANTED, THE COURT
            SHOULD LIMIT THE STAY TO THE ISSUANCE OF
            NOTICE TO, AND THE DISCOVERY OF, OUT-OF-STATE
            COLLECTIVE MEMBERS…………………………...……16

CONCLUSION………………………………………………...……19

CERTIFICATE OF COMPLAINCE…………………………………21

CERTIFICATE OF FILING AND SERVICE……………………...…22

RESPONDENT-PLAINTIFF'S APPENDIX……………………………23

# TABLE OF AUTHORITIES

## Cases

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois,*
    219 F.3d 674 (7th Cir. 2000)……………………………….……....1,3,10

*Apostol v. Gallion,* 870 F.2d 1335 (7th Cir. 1989)………………….……...12

*Asher v. Baxter Int'l Inc.,*
    505 F.3d 736, 741 (7th Cir. 2007)……………………………….……12, 14

*Aspen Am. Ins. Co. v. Charmoli,*
    No. 23-cv-610-bhl, 2023 WL 4562548 (E.D. Wis. July 17, 2023)……..7

*Bigger v. Facebook,* 947 F.3d 1043 (7th Cir. 2020)……………………13-14

*Bristol-Myers-Squibb v. Superior Court of Cal.,*
    137 S.Ct. 1773 (2017)..……………………………………….……...1-8, 11, 13-17

*Boone v. Ill. Dep't of Corr.,*
    71 F.4th 622 (7th Cir. 2023)…………………………………………..3,6

*Calvin v. Sheriff of Will Cty.,*
    No.03-cv-3086, 2006 WL 1005141 (N.D. Ill. Apr.14, 2006)…..………7

*Canaday v. Anthem Cos., Inc.,*
    9 F.4th 392, 399 (6th Cir. 2021)……………………………………....7-8

Espenscheid v. DirectSat USA, LLC,

705 F.3d 770 (7th Cir. 2013)………………………………………………9

*Flynn v. Exelon Corp.,*
    No. 19 C 8209, 2022 WL 267915 (N.D. Ill. Jan. 28, 2022)….…….......10

*Firestone Tire & Rubber Co. v. Risjord,*
    449 US. 368, 374 (1981)……………………………………………………12

*Fischer v. Federal Express,*
    42 F.4th 366, 382-83 (3d Cir. 2022)…………………………………..7, 8, 11

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
    No.17-CV-00564 NC, 2017 WL 11505620 (N.D. Cal. Dec. 19,
    2017)……………………………………………………………………6

*Groves v. U.S.,* 941 F.3d 315 (7th Cir. 2019)………………………………..10

*Hollins v. Regency Corp.,*
    867 F.3d 830, 833 (7th Cir. 2017)…………………………………………9

*Kessler v. Casey's Gen. Store, Inc.,*
    No. 22-CV-02971-SPM, 2023 WL 50000276 (S.D. Ill. Aug 4,
    2023)……………………………………………………..…………………15

*Kirkland & Ellis v. CMI Corp.,*
    No. 95 C 7457, 1996 WL 674072 (N.D. Ill. Nov. 19, 1996)…….……..12

*Knecht v. C & W Facility Services, Inc.,*
    No. 2:20-CV-3899, 2021 WL 2662051 (S.D. Ohio June 10, 2021)…......6

*Lochren v. Horne LLP,*
    6:21-cv-1640-WWB, 2022 WL 14065521 (M.D. Fla. May 3, 2022)….15

*Louisiana State Conf. of NAACP v. Louisiana,*
    495 F. Supp. 3d 400 (M.D. La. 2020)…..…………………………..…....19

*Luna Vanegas v. Signet Builders,*
    46 F.4th 636 (7th Cir. 2022)…..……………………......………..10-11

*Mussat v. IQVIA, Inc.,*
    953 F.3d 441 (7th Cir. 2020)……….……………..…………….…. 5,8-9

*Nken v. Holder,*
    556 U.S. 418 (2009)……………………………………………………17

*Nuclear Eng'g Co. v. Scott,*
    660 F.2d 241 (7th Cir. 1981) ………………..……………………….…10

*Oberg v. Allied Van Lines, Inc.,*
    No. 91 C 6576, 1992 WL 211506 (N.D. Ill. Aug. 26, 1992)…………..19

*Oberg v. Allied Van Lines, Inc.,*
    11 F.3d 679 (7th Cir. 1993)……….……………..…………………….19

*Piazza v. New Albertsons, Inc.,*
    No. 20 CV 03187, 2021 WL 3645526 (N.D. Ill. Aug. 16, 2021)…........13

*Reed v. Rhodes,*
    549 F.2d 1050 (6th Cir.1979)…………………………………..…..16-18

*Richardson-Merrell, Inc. v. Koller,*
    472 U.S. 424, 434 (1985)…………………………………………………11

*Seiffert v. Qwest Corp.,*
    No. CV-18-70, 2019 WL 859045 (D. Mont. Feb. 22, 2019)……………..6

*Vallone v. CJS Solutions Group, LLC,*
    9 F. 4th 861. 865 (8th Cir. 2021)………………………………….…..7

*Walker v. Walgreens Specialty Pharmacy, LLC,*
    No. 21 CV 5780, 2023 WL 5334609 (N.D. Ill. Aug. 18, 2023) ……....14

*Waters v. Day & Zimmermann,*
    23 F.4th 84 (1st Cir. 2022)………………………..……….…7-9, 11, 14

*Woods v. New York Life Ins. Co.,*
    686 F.2d 578 (7th Cir. 1982)……………………..……………..……..9

Statutes

8 U.S.C. §1188; ..............................................................................19

28 U.S.C. §1292(b)........................................1-4, 6, 10, 12, 14-15, 18


Other Authorities

8 C.F.R. §214.2(h)(6)(iv)(A)...............................................................18

20 C.F.R. §655.10((b)(2)......................................................................5

16 Wright et al., Fed. Prac. & Proc. §3929........................................18

Fed. R. Civ. P. 4(k)(1)......................................................................7-8

S.Rep.No.2434, 85th Cong. 2nd sess., 1958 U.S. Code Cong. & Ad.

  News, pp. 5255.........................................................................4

## INTRODUCTION

Signet begins its Petition for Permission to Appeal with a history of other Circuits' application of *Bristol-Myers-Squibb v. Superior Court of Cal.,* 137 S.Ct. 1773 (2017) (hereinafter *Bristol-Myers*), to Fair Labor Standards Act (FLSA) collective actions. Despite Signet's insistent focus on this history, it does not provide a good legal reason to decide the *Bristol-Myers* question now, rather than later when it might have real, rather than speculative, importance—at the decertification stage or after final judgment. This Court should instead deny Signet's Petition for the legally sufficient reason that it does not satisfy all the § 1292(b) criteria, *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000). Even if this Court concludes that Signet has satisfied the § 1292(b) criteria, prudential considerations still dictate denial.

If Signet's Petition is granted, the Court should reverse the District Court's stay of the entire case and limit the stay to the matters affected by this appeal—i.e., notice to and discovery of out-of-state opt-ins.

## FACTUAL BACKGROUND

On February 24, 2023, Luna Vanegas sought conditional certification of an FLSA collective. Dkt. #83. Four days later, Luna Vanegas filed a motion for leave to amend his complaint (Dkt. #92) to add a second Plaintiff, six additional Defendants (three companies related to Signet Builders, Inc. and the three corporate officers of those companies), allegations that Defendants' FLSA violations were willful, and state-law claims for breach of contract, quantum meruit, and unjust enrichment.

On August 2, 2023, Dkt. #107, the District Court granted both motions and approved the notice to be sent to the collective.[1] The District Court declined to decide whether *Bristol-Myers* barred collective members who worked outside Wisconsin, holding that issue was more properly addressed at the decertification stage when the existence of any such opt-ins would be known.

Signet moved to certify the August 2 order for interlocutory appeal, Dkt. #110, and Plaintiffs opposed on the grounds that postponing a decision on the *Bristol-Myers* issue did not meet § 1292(b) standards. Dkt. #114. On September 1, 2023, the District Court entered a new order holding that *Bristol-Myers* does not apply to FLSA collective actions; certifying that issue for interlocutory appeal and staying the entire case pending the outcome of the appeal. Dkt. #123 at 2.

Plaintiffs moved for reconsideration asking, *inter alia*, that the Court limit the stay to notice to and discovery of the out-of-state collective members. Dkt. #124. The District Court denied the request, explaining that "[l]itigating the case piecemeal would be inefficient." Dkt. #130, RA-23.

---

[1] The Court modified the collective definition to include "all H-2A workers who worked on agricultural construction projects for Signet, as well as all hourly-paid, non-managerial U.S. workers who provided manual labor on agricultural construction projects for Signet." Dkt. #107.

## ARGUMENT

### I.    SIGNET'S PETITION SHOULD BE DISMISSED BECAUSE IT DOES NOT SATISFY ALL 28 U.S.C. § 1292(B) CRITERIA AND FOR OTHER PRUDENTIAL REASONS.

#### A.    Standard of Review.

A district court may certify an order for interlocutory appeal if it finds that *all* four criteria set forth in 28 U.S.C. § 1292(b) are satisfied: (1) a question of law; (2) that is controlling and (3) contestable; the resolution of which (4) will "speed up" the litigation. *Ahrenholz v. Bd. of Trustees,* 219 F.3d 674, 675 (7th Cir. 2000).

This Court examines those four criteria *de novo, Ahrenholz,* 219 F.3d at 675 ("the [§ 1292(b)] standard is the same for the district court and for us").

#### B.    The Question Identified is not Controlling.

Although the *Bristol-Myers* issue presents an issue of law, it is <u>not</u> a "controlling" issue for the purposes of § 1292(b). Signet claims that the *Bristol-Myers* issue is controlling because,

> [w]ithout immediate appellate review, this issue will inevitably arise again in future cases while trial courts grapple with inconsistent precedent and a paucity of binding authority...

Pet. at 3. While the issue is likely to arise again, that does not make it a "controlling question" sufficient to override the policies behind the final judgment rule. To be a "controlling issue of law" a question must have the potential to seriously affect the future course of the *existing* litigation. *See Boone v. Ill. Dep't of Corr.,* 71 F.4th 622, 625 (7th Cir. 2023) ("[T]he question of law is controlling" where its resolution is "quite likely to affect the future course of the litigation"). The language of § 1292(b)

makes clear that it was not intended to allow the final judgment rule to be

undermined simply because an issue is "important." Rather, as the legislative

history of § 1292(b) indicates, interlocutory appeals are to be used only in

extraordinary cases where decision of an issue before final judgment might avoid

protracted and expensive litigation:

> Your Committee is of the view that the appeal from interlocutory orders …
> should and will be used only in exceptional cases where a decision of the
> appeal may avoid protracted and expensive litigation, as in antitrust and
> similar protracted cases, where a question which would be dispositive of the
> litigation is raised and there is serious doubt as to how it should be decided.

S.Rep.No.2434, 85th Cong.2nd sess., 1958 U.S. Code Cong. & Ad. News, pp. 5255,

5260.

The *Bristol-Myers* issue, as important as it may be, is not "controlling" in the

§ 1292(b) sense given the posture of this case. Signet claims that the issue is

"controlling" because answering it could, potentially, allow the District Court to

avoid giving notice to "out-of-state [collective members who] would materially

expand the scope of discovery, potential damages, and the costs of litigation." Pet. at

12. That conclusory statement does not hold up under examination. The *Bristol-

Myers* issue will not be dispositive of any claim in this case, will not save time and

expense for the District Court or the litigants, and will not materially affect the

future course of this litigation. No matter how the *Bristol-Myers* issue is decided,

Plaintiffs' FLSA, breach of contract and quantum meruit claims will remain in the

case as will Plaintiffs' claims that all four Signet entities and their corporate officers

are liable as employers for those back wages. Even the collective action will go forward regardless of the *Bristol-Myers* issue.

While a decision on the *Bristol-Myers* issue might narrow the scope of the collective action, the District Court has indicated that it will permit Plaintiffs to move to certify their state law claims as a Rule 23 class. Dkt. #107 at 23. Those claims involve the same workers and the same "agricultural" exemption issue as Plaintiffs' FLSA claims.[2] If such a class was certified, the collective action members, including those potentially excluded by *Bristol-Myers*, will receive notice and participate in the case regardless of this appeal. *See Mussat v. IQVIA, Inc.,* 953 F.3d 441 (7th Cir. 2020) (holding that *Bristol-Myers* does not apply to Rule 23 class actions).

Even in the absence of a class action on the state law claims, any additional discovery and damages posed by out-of-state opt-ins is likely to be *de minimus*. While Defendants claim there may be 500 out-of-state collective action members, they also claim that only a handful of those workers are likely to opt-in.[3] If that is

---

[2] All collective action members were hired under the same H-2A visa contract which promised the employer would pay the applicable federal minimum wage and abide by all federal employment-related laws. If the collective members did not perform "agricultural work" as defined by the FLSA, then federal law requires foreign "non-agricultural" construction workers (and U.S. workers performing the same tasks) to be paid no less than the prevailing wage for construction workers set by DOL—a wage higher than was offered to the collective action members. 20 C.F.R. §655.10((b)(2). *See* Dkt. #108, RA-3 ¶¶66-75.

[3] Signet has insisted that fewer than 40 workers are likely to join the action, Dkt. #96 at 17. Signet explains this lack of interest by a fear of the potential loss of "qualification for the H-2A agricultural worker visa program altogether." *Id*. at 19.

the case, the added discovery and increased potential damages, if any, will hardly justify abandoning the final judgment rule. Indeed, since Signet has conceded that all collective action members performed the same work pursuant to substantially the same contract, Dkt. #96 at 13, the addition of out-of-state collective members (if any actually join) will have little effect on the scope of discovery. The workers possess no evidence relevant to the contested issues in the case—the agricultural exemption, willfulness, employer status. That evidence is all in Defendants' possession. Thus, even if a larger collective results from denying the appeal, that increase in size is unlikely to have much effect on discovery.

Because the *Bristol-Myers* issue will not materially "affect the future course of the litigation," *Boone,* 71 F.4th at 625, it does not present a "controlling" issue and the Petition should be denied. Many courts have reached a similar conclusion. *See Seiffert v. Qwest Corp.*, No. CV-18-70-GF-BMM, 2019 WL 859045, at *5 (D. Mont. Feb. 22, 2019) (denying petition for interlocutory appeal of *Bristol-Myers* issue in FLSA case because issue would not materially affect the future course of the litigation); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 11505620, at *2–3 (N.D. Cal. Dec. 19, 2017) (same); *Knecht v. C & W Facility Servs., Inc.*, No. 2:20-CV-3899, 2021 WL 2662051, at *1 (S.D. Ohio June 10, 2021) (denying §1292(b) certification and noting that even if the court ruled on *Bristol-Myers* application to FLSA before notice, it would not materially advance the ultimate termination of the lawsuit).

### C.    The Order at Issue Here is not Contestable.

"[A] district court's order is contestable if there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority **and there is a substantial likelihood that the district court ruling will be reversed on appeal**." *Calvin v. Sheriff of Will Cty.*, No.03-cv-3086, 2006 WL 1005141, at *4 (N.D. Ill. Apr. 14, 2006) (emphasis added); *Aspen Am. Ins. Co. v. Charmoli,* No. 23-cv-610-bhl, 2023 WL 4562548 at *3 (E.D. Wis. July 17, 2023) (same).

Signet's Petition conspicuously fails to address its likelihood of success and with good reason. Whether *Bristol-Myers* applies to the FLSA turns on the interpretation of FRCP 4(k)(1). Three Circuits have held that *Bristol-Myers* applies because Rule 4(k)(1) requires federal courts to conduct a separate personal jurisdiction analysis under the Fourteenth Amendment Due Process Clause for each FLSA opt-in. *See Fischer v. Federal Express,* 42 F.4th 366, 382-83 (3d Cir. 2022), *Canaday v. Anthem Cos., Inc.,* 9 F.4th 392, 399 (6th Cir. 2021), and *Vallone v. CJS Solutions Group, LLC,* 9 F. 4th 861. 865 (8th Cir. 2021). By contrast, the First Circuit held that Rule 4(k)(1) was a rule governing service of process, and that once the named plaintiff properly served the defendant under that Rule, subsequent opt-ins only had to comply with the Fifth Amendment's nationwide jurisdictional standards. *Waters v. Day & Zimmerman NPS, Inc.,* 23 F.4th 84, 94 (1st Cir. 2022).

7

In *Mussat v. IQVIA,* 953 F.3d 441 (7th Cir. 2020), this Court held that *Bristol-Myers* does not apply to Rule 23 class actions, adopting an interpretation of Rule 4(k)(1) similar to that employed by the *Waters*' Court:

> Aside from the fact that IQVIA's position is in tension with Federal Rule of Civil Procedure 82, which stipulates that the rules "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts," there is a simpler problem with it: IQVIA is mixing up concepts of service and jurisdiction. Rule 4(k) addresses *how* and *where* to serve process; it does not specify *on whom* service must be served.

*Mussat,* 953 F.3d at 448. Because Rule 4(k)(1) did not impose ongoing Fourteenth Amendment jurisdictional requirements, Rule 23 class members did not have to show their claims related to the forum state after the named plaintiff served the defendant under Rule 4(k)(1). *Id.* By the same logic, FLSA opt-ins need not show their claims relate to the forum state once the named plaintiff has properly served the defendant under Rule 4(k)(1).

*Mussat* also held that, regardless of how Rule 4(k)(1) is interpreted, where a plaintiff acts in a representative capacity, the represented parties need not separately establish personal jurisdiction over the defendant. *Mussat,* 953 F.3d at 446-448 ("a district court need not have personal jurisdiction over the claims of absent class members at all."). The *Fischer,* 42 F.4th at 373, and *Canaday,* 9 F.4th at 402, Courts held that FLSA collective actions were not sufficiently like Rule 23 class actions for that rule to apply. Unlike those Courts, however, the Seventh Circuit has repeatedly recognized the similarities between class and FLSA collective actions. In 1982, Judge Posner held that FLSA collective suits were fundamentally

8

akin to class actions because both were genuinely "representative actions." *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 ("If we are right that despite the opt-in provision added by the 1947 amendments, section 16(b) creates a genuine representative action (which we think it does, notwithstanding the fact that the provision as it originally appeared in the Portal-to-Portal Act was captioned "Representative Actions Banned")). *Espenscheid v. DirectSat USA, LLC* elaborated on that point:

> Collective actions are certified and decertified just like class actions, unaffected by the absence of a governing rule of procedure. And "when a collective action is decertified, it reverts to one or more individual actions on behalf of the named plaintiffs," *Alvarez v. City of Chicago*, 605 F.3d 445, 450 (7th Cir. 2010)—which is just what happens when a Rule 23 class is decertified: the unnamed class members go poof and the named plaintiffs' claims revert to being individual claims. If the denial of class certification is reversed, the suit will proceed with the plaintiffs as representatives of the opt-ins. There is no relevant difference between the collective, consisting of opt-ins, and the class, consisting of class members minus the opt-outs.

688 F.3d 872, 877 (7th Cir. 2012); *See also Espenscheid*, 705 F.3d 770, 771-772 (7th Cir. 2013). It is not surprising, then, that the Seventh Circuit, alone among the Circuits, does not treat opt-ins as parties until a collective action is certified. *Hollins v. Regency Corp.*, 867 F.3d 830, 833 (7th Cir. 2017). *See Waters*, 23 F.4th at 90 (noting that the Seventh Circuit's ruling in *Hollins* is unique).

Given this weight of precedent treating FLSA collective actions as representative actions similar to Rule 23 class actions, *Mussat*'s holding that represented parties need not satisfy jurisdictional requirements applies to this case, as the District Court recognized. Dkt. #123 at 5.

Signet's failure to address this precedent and explain why it is, nevertheless, likely to succeed on the merits of its appeal is itself sufficient reason to deny their petition for interlocutory appeal. *Flynn v. Exelon Corp.*, No. 19 C 8209, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022) ("Defendants have not proffered any argument to indicate that this Court's earlier ruling would be reversed – let alone an argument as to the likelihood of such an event. The Court therefore denies certification of an interlocutory appeal … because *the issue does not reach the high threshold of contestability*.").

### D. An Interlocutory Appeal Will Delay Rather than Advance the Litigation.

The fourth criterion, that granting interlocutory review will "speed up" the litigation, *Ahrenholz,* 219 F.3d at 675, presents another compelling reason for denying Signet's Petition. *See Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 247 (7th Cir. 1981), overruled on other grounds *Groves v. U.S.,* 941 F.3d 315 (7th Cir. 2019) ("1292(b) was enacted . . . for the important and salutary purposes of shortening the length of litigation and avoiding unnecessary work and expense by the courts and litigants."). Granting interlocutory appeal in this case will delay the resolution of the litigation, not speed it up.

Under the current scheduling order, the opt-in period ends 90 days after notice is issued, Dkt. #107 at 23, summary judgment motions are due February 16, 2024 and trial is scheduled for October 7, 2024. Dkt. #68, RA-24 at 5-6. The prior Seventh Circuit decision in this case has already clarified the factual considerations that will determine whether the FLSA agricultural exemption applies. *Luna*

10

*Vanegas v. Signet Builders,* 46 F.4th 636, 641-645 (7th Cir. 2022). Those issues involve basic facts about how the Defendants' business is organized, who it works for, whether its work is ordinarily performed by farmers, who it competes with, etc. These are historical facts that are unlikely to be disputed. What is disputed are the legal conclusions to be drawn from those undisputed facts—a determination appropriate for summary judgment. Accordingly, if Signet's Petition is denied, the entire case will likely be decided on summary judgment motions filed in February 2024. Even if the case is not resolved on summary judgment, it will be after trial in October 2024.

      If the Court grants Signet's Petition, it will be long after February or October 2024 before a final judgment can be entered. Interlocutory appeals in the Seventh Circuit regularly take more than a year from the time a court certifies an issue until the case is returned to the district court. *See* RA-1 (listing seven interlocutory appeals decided in 2022 and 2023 that averaged 14.43 months). In interlocutory appeals involving the *Bristol-Myers* issue, the delay has been longer, mainly because the parties filed for certiorari with the Supreme Court. *See* RA-1 (*Fischer,* 22 months from certification to remand to district court; *Waters,* 26 months). That is likely to happen in this case as well. Once the interlocutory hiatus is over, regardless of how it is resolved, the case will continue *exactly* where it left off with no narrowing of the issues, no savings of work or expense, and no other discernable benefit as a result of the appeal.

The fact that granting § 1292(b) review in this case will delay, rather than advance, the resolution of this case, is a compelling reason to deny Signet's Petition. *See Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 434 (1985) ("One purpose of the final judgment rule . . . is to avoid the delay that inherently accompanies time-consuming interlocutory appeals."); *Firestone Tire & Rubber Co. v. Risjord,* 449 US. 368, 374 (1981) (The final judgment rule serves the "sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment.") (Internal quotation omitted); *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 741 (7th Cir. 2007) ("§1292(b), must be used sparingly lest interlocutory review increase the time and expense required for litigation.").

A delay of eighteen months to two years is unjustifiable in a case that seeks something so basic as the lawful minimum wage and overtime. *Apostol v. Gallion,* 870 F.2d 1335, 1338 (7th Cir. 1989) ("During the appeal memories fade, attorneys' meters tick, judges' schedules become chaotic (to the detriment of litigants in other cases). Plaintiffs' entitlements may be lost or undermined."); *see also Kirkland & Ellis v. CMI Corp.*, No. 95 C 7457, 1996 WL 674072, at *4 (N.D. Ill. Nov. 19, 1996) ("Under these circumstances, an unnecessary interlocutory appeal would only prolong the life of the litigation at all the parties' expense."). It is also unconscionable given the significance of the substantive question at the heart of this case—whether the construction work performed by the collective (however

defined) constitutes agricultural work exempt from overtime. Since an interlocutory appeal will not advance the litigation in any way, waiting until there is a final judgment is unquestionably the more efficient way to address the *Bristol-Myers* issue, both in terms of the parties' interests in speedy resolution of all issues in the case and the public's interest in resolving the meaning of "agriculture" under the FLSA.

Signet's arguments to the contrary are mostly irrelevant. The Petition warns that sending notice to an overbroad class may involve the court in "soliciting claims." But the same could be said about any conditionally certified class, all of which have the potential to be decertified later. Despite that reality, conditional certification decisions are generally viewed as inappropriate for interlocutory appeal. *See, e.g., Piazza v. New Albertson's Inc.,* No. 20-cv-3187, 2021 WL 3645526 at *3 (N.D. Ill. Aug. 16, 2021).

Signet's dependence on *Bigger v. Facebook,* 947 F.3d 1043 (7th Cir. 2020), is equally misplaced. *Bigger* was an arbitration case and must be read in the context of the strong federal policy favoring arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 647 (1985). More importantly, the *Bigger* appeal, unlike this one, had the potential to significantly advance the litigation in the district court. In seeking certification of its appeal, Facebook argued that, absent an immediate appeal, "the next phase of this case would inevitably entail extensive motion practice. . . Facebook would need to file potentially hundreds of motions to compel arbitration. Mini-trials would ensue. The entire

process would be lengthy, expensive and invasive." *Bigger,* 2019 WL 1798145 (N.D. Ill. Apr. 8, 2019) (Facebook reply in support of § 1292(b) certification). Granting interlocutory appeal in this case would achieve no such efficiencies or cost savings and that makes all the difference.[4]

### E.     Signet's Petition to Appeal the *Bristol-Myers* Issue is Premature and it is Imprudent for this Court to Allow the Interlocutory Appeal.

In the thirty-one months since this case was filed, one person has filed a consent to sue and he, like Luna Vanegas, worked in Wisconsin. By seeking to appeal under these circumstances, Signet is asking this Court to issue an advisory opinion that, *if* an out-of-state worker were to attempt to join the case, he or she would be barred. As Judge Barron explained in his dissent in *Waters,* "we [s]hould not be deciding a major question about the meaning of the Federal Rules of Civil Procedure in a case in which it may turn out not to be necessary for us to decide that question at all." 23 F.4th at 105.

Many district courts confronted with the *Bristol-Myers* issue have taken a similar position, finding that it would be premature to decide the personal jurisdiction question until out-of-state workers actually attempt to join the action. *See Walker v. Walgreens Specialty Pharmacy, LLC*, No. 21 CV 5780, 2023 WL

---

[4] When an interlocutory appeal genuinely facilitates more efficient district court proceedings, as was the case in *Bigger*, the delay inherent in an interlocutory appeal may not be a concern. But where, as here, an interlocutory appeal will in no way simplify or speed up proceedings in the district court, the lengthy delay caused by an interlocutory appeal weighs heavily against granting such review. *See Asher*, 505 F.3d at 741 ("§ 1292(b) must be used sparingly lest interlocutory review increase the time and expense required of litigants.").

5334609, at *7 (N.D. Ill. Aug. 18, 2023) ("The [c]ourt declines to wade into this dispute in this case's current posture. . . . Courts in this circuit (and elsewhere) consistently decline the invitation to issue such abstract legal pronouncements and, instead, defer such rulings until after conditional certification."); *Kessler v. Casey's Gen. Store, Inc.,* No. 22-CV-02971-SPM, 2023 WL 50000276 at *3 (S.D. Ill. Aug 4, 2023) ("it is premature to reach the question of personal jurisdiction before individuals have been given notice of the collective action"); *Lochren v. Horne LLP,* No. 6:21-cv-1640-WWB, 2022 WL 14065521 (M.D. Fla. May 3, 2022) (same, citing cases).

The proper time to decide the *Bristol-Myers* question is after final judgment (assuming out-of-state workers actually join and the issue presents a live controversy). Waiting not only avoids the problem of issuing a decision about a procedural challenge that has not happened yet, it also makes sense as a practical matter. If Signet is correct that only a handful of collective members will join the case, Signet's justification for an interlocutory appeal—the cost of discovery and increased potential damages from notifying out-of-state workers—falls apart.

A second prudential concern counsels against allowing Defendants' appeal. While the § 1292(b) criteria focus on the advantages to permitting an interlocutory appeal, the Court must also consider the adverse effects that such review may have. Here, in addition to the obvious problem of fading memories and lost documents caused by delay, there is another more serious problem: the deleterious effect on Plaintiffs' ability to contact collective members, both in-state and out-of-state. The

15

difficulty of locating H-2A workers has been long recognized by worker advocates

and the United States Government. In March of 2023, the U.S. Department of

Labor (DOL) entered a partnership with Mexico's Ministry of Labor and Social

Welfare to try to locate thousands of workers who were owed money for unpaid

wages, and whom the DOL had been unable to locate. See https://www.cnn.com

/2023/03/15/americas/us-mexico-lost-wages-intl-latam/index.html. DOL officials

have explained the struggle to locate and communicate with workers as the result of

their migratory lives, differing conventions for entering personally identifying

information in various data bases and the poor quality of employer records of their

workers permanent contact information abroad. See https://prismreports.org/2023/

04/14/h2a-visa-wage-theft-exploitation. The more time that passes between a work

assignment and the issuance of notice, the more likely collective members are to

have moved multiple times and the more difficult it will be to notify them of their

rights.

That serious notice problem, coupled with the many reasons for not

undermining the final judgment rule, and the lack of any advantage from deciding

the *Bristol-Myers* question now, makes it prudent to deny Signet's Petition.

## II.    IF SIGNET'S PETITION IS GRANTED, THE COURT SHOULD LIMIT THE STAY TO THE ISSUANCE OF NOTICE TO, AND THE DISCOVERY OF, OUT-OF-STATE COLLECTIVE MEMBERS.

The District Court abused its discretion when it granted a complete stay of

this action. This Court has full authority to narrow the stay when ruling on the

petition to appeal and, if it grants the petition, it should do so. *See Reed v. Rhodes*,

549 F.2d 1050, 1052 (6th Cir.1979) (accepting appeal of certified order but reversing the district court's stay of the entire case as an abuse of discretion).

Whether to grant a stay, and the appropriate scope of such a stay, requires the consideration of four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder,* 556 U.S. 418, 434 (2009). All these factors favor denying the stay or limiting it to notice to, and the discovery of, out-of-state opt-ins.

As argued above[5] Signet has made no showing, let alone a strong one, that it is likely to succeed on the merits of its *Bristol-Myers* argument. That weighs against any stay. The District Court did not consider this factor.

Signet's certification motion identifies only one harm—the harm of stirring up litigation among the out-of-state collective members and the assumed cost of conducting discovery regarding those individuals. See Dkt. #110 at 7-8, 11-14. But that harm, if it exists, can be addressed with a limited stay of notice to and discovery of the out-of-state opt-ins; any broader stay is unnecessary and an abuse of discretion.

The District Court also abused its discretion by failing to consider the harm to the Plaintiffs of a case-wide stay. No matter how the *Bristol-Myers* issue is decided, Plaintiffs' case will remain in exactly the same posture. They will still have

---

[5] *See Supra* p. 6-9.

to conduct discovery related to the agricultural exemption, the willfulness of Defendants' FLSA violations, and whether the Signet corporate entities and their three individual officers acted as employers. Unnecessarily staying this discovery and thereby delaying the ultimate resolution of the case, with all of the concerns regarding fading memories and lost documents that come with delay, is precisely the kind of harm that can be, and should be, avoided with a narrowly tailored stay. Defendants have not, nor can they, offer any reason why discovery and related motion practice should not go forward during the pendency of this appeal. Contrary to the District Court's comment, there is nothing piecemeal about allowing discovery that will have to be taken in any event to proceed while an interlocutory appeal of a discrete issue is being considered. To the contrary, where, as here, an appeal "involves only part of the case, ordinarily it should be better to proceed with the rest of the case unless there is sufficient overlap to threaten extensive duplication later or loss of the benefits of appeal"—neither of which considerations is present here. 16 Wright et al., Fed. Prac. & Proc. §3929. *See Reed,* 549 F.2d at 1052 (vacating stay pending appeal and concluding that, in adopting § 1292(b) without requiring a mandatory stay, Congress anticipated that cases would proceed simultaneously in the district court and the court of appeals).

The District Court also abused its discretion by failing to consider the public interest. Congress has mandated that the importation of foreign workers should not "adversely affect the wages and working conditions of similarly employed U.S. workers." 8 U.S.C. §1188; 8 C.F.R. §214.2(h)(6)(iv)(A). Plaintiffs allege that Signet is

doing just that by paying its foreign workers (and U.S. workers hired under the same contract) agricultural wages rather than the higher wages applicable to the non-agricultural construction work Plaintiffs allege that they are performing. The public interest will be served by resolving that question as promptly as possible and a limited stay will help move the case forward.

A complete stay may be appropriate where an interlocutory appeal could potentially terminate the case. But where, as here, the appeal addresses one narrow aspect of the case—the size of the collective—a complete stay is a clear abuse of discretion. *See Oberg v. Allied Van Lines, Inc.*, No. 91 C 6576, 1992 WL 211506, at *8 (N.D. Ill. Aug. 26, 1992), aff'd and remanded, 11 F.3d 679 (7th Cir. 1993) (certifying interlocutory appeal but declining to stay the entire case); *Louisiana State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 416–19 (M.D. La. 2020) (denying stay pending interlocutory appeal, because of harm to plaintiffs from a stay and defendants' failure to demonstrate why moving forward with discovery would harm them).

## CONCLUSION

For the reasons set forth above, Signet's Petition for Permission to Appeal should be denied. If the Petition is not denied, the stay of proceedings should be limited to notice to, and discovery of, out-of-state potential collective members.

Respectfully submitted this 25th of September, 2023.

*/s/Jennifer J. Zimmermann*
Jennifer J. Zimmermann
(*Counsel of Record*)
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200

Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Edward Tuddenham
42 Ave. Bosquet 75007 Paris
FRANCE
edwardtuddenham@gmail.com

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA 52240
lgaynor@iowalaw.org


*Counsel for Respondent-Plaintiff, Jose Ageo Luna Vanegas*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing Answer in Opposition to Petition for Permission to Appeal complies with the word limit of Fed. R. App. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5125 words.

This Answer complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Cir. R. 32(b), and the type-style requirements of Fed. R. App. P. 32(a)(6) because this Answer has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 12pt. size Century Schoolbook font.

Dated this 25th day of September, 2023.

<u>*/s/Jennifer J. Zimmermann*</u>
Jennifer J. Zimmermann
(*Counsel of Record*)
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Edward Tuddenham
42 Ave. Bosquet 75007 Paris
FRANCE
edwardtuddenham@gmail.com

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA 52240
lgaynor@iowalaw.org

*Counsel for Respondent-Plaintiff, JOSE AGEO LUNA VANEGAS*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on September 25, 2023, I electronically filed the foregoing with

the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by

using the CM/ECF system.  I certify that all participants in the case are registered

users of CM/ECF and that service will be accomplished by the CM/ECF system.

Dated this 25th day of September, 2023.

<div align="center" style="margin-left:40%">

*/s/Jennifer J. Zimmermann*
Jennifer J. Zimmermann
(*Counsel of Record*)
LEGAL ACTION OF WISCONSIN
744 Williamson Street, Suite 200
Madison, WI 53703
(608)256-3304
jjz@legalaction.org

Edward Tuddenham
42 Ave. Bosquet
75007 Paris
FRANCE
edwardtuddenham@gmail.com

Lorraine Gaynor
IOWA LEGAL AID
1700 S. 1st Avenue, Suite 10
Iowa City, IA 52240
lgaynor@iowalaw.org

</div>

*Counsel for Respondent-Plaintiff, Jose Ageo Luna Vanegas*

## INDEX TO RESPONDENT-PLAINTIFF'S APPENDIX

Interlocutory Appeals Time Table…………………………………………….....………RA-1

District Court Dkt. #108 – Plaintiffs' Amended Complaint………………………….…RA-3

District Court Dkt. #130 – Text Order from District Court……………….…….………RA-23

District Court Dkt. #68 – Scheduling Order…………………………….…………..…RA-24

# EXHIBIT A

**7th Circuit Interlocutory Appeals Processing Times**

| Case Name | Date Certified for Appeal by District Court | Date Mandate issued | Processing Time |
|---|---|---|---|
| *McGee v. Parsano,* 55 F.4th 565 (7th Cir. 2022) | July 30, 2020 | January 6, 2023 | 28 months |
| *Eddlemon v. Bradley University,* 65 F.4th 335 (7th Cir. 2023). | July 26, 2022 | May 4, 2023 | 9 months |
| *Boone v. Illinois Dep't of Corrections,* 71 F.4th 622 (7th Cir. 2023) | April 25, 2023 | July 13, 2023 | 2 months |
| *USA Gymnastics v. Liberty Insurance Underwriters,* 27 F. 4th 499 (7th Cir. 2022) | Feb. 12, 2020 | Apr. 5, 2022 | 26 months |
| *Ashley W. v. Holcomb*, 34 F.4th 588 (7th Cir. 2022) | Sept. 29, 2021 | June 23, 2022 | 9 months |
| *T.S. by and through T.M.S. v. Heart of CarDon, LLC,* 43 F.4th 737 (7th Cir. 2022) | July 14, 2021 | Aug. 29, 2022 | 13 months |
| *Herrera v. Cleveland,* 8 F.4th 493 (7th Cir. 2021) | June 12, 2020 | Aug. 30, 2021 | 14 months |

**Interlocutory Appeals involving Bristol-Myers Issue Processing Times**

| Case Name | Date Certified for Appeal by District Court | Date Mandate issued by Court of Appeal | Date Petition for Writ of Certiorari denied | Processing Time |
|---|---|---|---|---|
| *Waters v. Day & Zimmermann NPS, Inc*., 23 F.4th 84 (1st Cir. 2021) | Aug. 14, 2020 | January 13, 2022 | June 6, 2022 | 22 months |
| *Fischer v. Fed. Express Corp*., 42 F.4th 366 (3d Cir. 2022) | January 14, 2021 | August 17, 2022 | Mar. 6, 2023 | 26 months |

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOSE AGEO LUNA VANEGAS, &
JOSE LUIS GARCIA GONZALEZ,
on behalf of themselves and all
others similarly situated,

        Case No. 21-cv-54

     Plaintiffs,

       **COLLECTIVE ACTION
COMPLAINT PURSUANT
29 U.S.C. §216(b)**

v.

SIGNET BUILDERS, INC.,
SIGNET CONSTRUCTION, LLC,
SIGNET CONSTRUCTION, INC., NORTHRIDGE
CONSTRUCTION, INC., ORVILLE J.
SCHONEFELD II, NATALIE FARMER,
RODNEY J. SCHONEFELD

     Defendants.

---

**AMENDED COMPLAINT**

---

**PRELIMINARY STATEMENT**

1. This is an action for damages and declaratory relief by two Mexican H-2A guest workers

   against the employers for which they worked for a number of years between approximately

   2004 and 2019.  Plaintiffs allege that Defendants Signet Builders, Inc., Signet Construction,

   LLC, Signet Construction, Inc., and/or Northridge Construction, Inc., operating as a single

   entity dominated by, and at the direction of, their officers, Orville J. Schonefeld II, Natalie

   Farmer, and Rodney J. Schonefeld, misclassified Plaintiffs as agricultural workers and, as a

   result, violated their rights and those of other similarly situated workers under the Fair Labor

   Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA").  Plaintiffs also allege that Defendants'

misclassification of Plaintiffs resulted in payment of less than the lawful minimum wage for their work for which Plaintiffs are entitled to relief pursuant to common law breach of contract, or alternatively in *quantum meruit* or unjust enrichment.

2.  Plaintiffs Jose Ageo Luna Vanegas and Jose Luis Garcia Gonzalez are citizens of Mexico who were legally admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to work for Defendants building livestock confinement structures in several U.S. states for various years between 2004 and 2019.  In 2019, Plaintiffs worked for Defendants in Wisconsin for approximately three months and Indiana for approximately five months. In 2018, Plaintiff Luna Vanegas worked for Defendants in Minnesota and Indiana for approximately seven months.

3.  Because Plaintiffs' work was not performed incident to or in conjunction with agriculture as defined under the FLSA, Defendants violated their obligations to Plaintiffs, and all others similarly situated, under federal law by failing to pay them overtime wages as required by the FLSA.  Nor did Plaintiffs' work meet the definition of agriculture under the H-2A regulations.  The non-agricultural work Plaintiffs performed was only permitted pursuant to the H-2B visa program and Plaintiffs should have been paid the federal minimum wage applicable to H-2B visa workers performing such construction work.

4.  Plaintiffs bring their FLSA claim on behalf of themselves and on behalf of all others similarly situated ("Prospective Collective Action Members"), to recover unpaid overtime wages, liquidated damages, costs of litigation, and attorney's fees under the FLSA.  Plaintiffs also seek their lawful construction work wages pursuant to breach of contract, *quantum meruit*, or alternatively unjust enrichment.

**JURISDICTION**

5.   This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), as this action arises under the FLSA.

6.   This Court has personal jurisdiction over all Defendants because they maintained continuous and systematic contacts with the state of Wisconsin.  In 2019, Defendants employed Plaintiffs at work sites near Lake Mills, Wisconsin and housed Plaintiffs in Whitewater, Wisconsin.  During 2020, Defendants conducted business and employed temporary foreign workers near Lake Mills.

7.   This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**VENUE**

8.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2)-(3) and (c)(2) because many of the acts or omissions that give rise to Plaintiff's claims occurred within this District, and because Defendants are subject to the Court's personal jurisdiction.

**PARTIES**

9.   Plaintiffs, Jose Ageo Luna Vanegas and Jose Luis Garcia Gonzalez are citizens and residents of Mexico.  During the periods of time relevant to this action, Plaintiffs were admitted to the United States under the H-2A temporary foreign worker visa program administered by the

U.S. Department of Labor pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to perform labor for Defendant Signet Builders, Inc. Workers admitted into the United States on H-2A visas are commonly referred to as "H-2A workers."  In this case, as described by Defendants, the labor was to be performed "[o]n farms," with the workers employed to "unload materials, lay out lumber, tin sheets, trusses, and other components for building livestock confinement structures.  Lift tin sheets to roof and sheet walls, install doors, and caulk structure.  Clean up

RA-5

job sites.  Occasional use of forklift upon employer provided certification."

10. The proposed Collective Action Members are defined as: "All U.S. and H-2A workers who worked on agricultural construction projects for Signet Builders, Inc., Signet Construction, LLC, Signet Construction, Inc. and/or Northridge Construction, Inc. at any time on or after January 2019 who were not paid at one and one-half times their regular rate for hours worked in excess of 40 during a workweek."  Plaintiffs' signed Consent Forms have already been filed (Dkt. #1, Attachment #3; and Dkt. # 20) and are incorporated herein by reference.

11. Defendants Signet Builders, Inc., Signet Construction, LLC, Signet Construction, Inc., and Northridge Construction, Inc. are inter-related businesses that acted as FLSA employers of Plaintiffs and the collective action members (hereafter referred to as the "Signet Companies").  They share the same corporate officers and operate as a single entity performing construction work on large scale projects such as assisted living facilities, multi-family and military housing, and agricultural buildings.  These companies provide construction services to businesses in Wisconsin, Iowa, Indiana, and other U.S. states and compete with other construction contractors for work, including their work on agricultural buildings.  They conduct business in this District.  Plaintiffs and the Prospective Collective Action Members worked with and handled materials that had moved in interstate commerce, including tin sheets, lumber, and supplies.  During both 2019 and 2020, Defendants' enterprise had annual gross volume of business done in excess of $500,000.

12. Defendant Orville J. Schonefeld II was the President and director of Signet Builders, Inc., Signet Construction, Inc., Signet Construction LLC, and Northridge Construction, Inc.

13. Defendant Natalie Farmer was the Vice President and director of Signet Builders, Inc., Signet Construction, Inc., Signet Construction LLC, and Northridge Construction, Inc.

14. Defendant Rodney J. Schonefeld was the Chief Financial Officer of Signet Builders, Inc.,

    Signet Construction, Inc., Signet Construction LLC, and Northridge Construction, Inc.

15. At all times relevant to this action, Defendants employed Plaintiffs and Prospective

    Collective Action Members within the meaning of the FLSA, 29 U.S.C. § 203(d), and

    were their "employer" within the meaning of 20 C.F.R. § 655.103(b).  Defendants hired

    the Plaintiffs and Prospective Collective Action Members, assigned them their job

    responsibilities, supervised and oversaw their work, and paid them their wages for their

    labor.

### Defendants' Participation in the H-2A Visa Program

16. An employer in the United States may import H-2A workers to perform agricultural labor or

    services, as defined by 20 C.F.R. § 655.103(c), on a seasonal or temporary basis if the U.S.

    Department of Labor ("DOL") certifies that: (1) there are insufficient available workers

    within the United States to perform the job; and (2) the employment of aliens will not

    adversely affect the wages and working conditions of similarly situated U.S. workers. 8

    U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).

17.  An employer may import H-2B workers to perform non-agricultural labor or services on a

    seasonal or temporary basis if the DOL makes a similar certification. 20 C.F.R. §§ 655.1,

    *et.seq*.

18. In defining "agricultural labor or services", the H-2A regulations incorporate the FLSA

    definition of agriculture from 29 U.S.C. § 203(f) and the Internal Revenue Code definition

    from 26 U.S.C. § 3121(g).  20 C.F.R. § 655.103(c).

19. Employers seeking the admission of H-2A workers must first file an application for

    temporary employment certification with the DOL.  20 C.F.R. § 655.130.

20. The temporary employment certification application must include a job offer, commonly

referred to as a "clearance order" or "job order," that complies with applicable regulations and is used in the recruitment of both U.S. and H-2A workers.  20 C.F.R. § 655.121(a)-(c). The DOL's regulations establish the minimum benefits, wages, and working conditions that must be included in the job offer to avoid adversely affecting U.S. workers.  20 C.F.R. §§ 655.0(a)(2), 655.122 and 655.135.  Among other things the application requires the employer to certify that it will pay the highest of the applicable prevailing wage, AEWR, or the Federal or State minimum wage. 20 C.F.R. § 655.120.

21. The terms required in the temporary employment certification application and the job offer must be included in the employment contract between the employer and the H-2A workers. 20 C.F.R. § 655.122(q).

22. During 2018, 2019, 2020, 2021 and 2022 Defendants filed various applications to employ temporary foreign workers through the H-2A program to perform construction labor in a number of different U.S. states.  In 2018, 2019, and 2020 Defendants' applications were filed in the name of Signet Builders, Inc.  In 2020-2022 Defendants' applications were filed in the name of Signet Construction, LLC.  Each of these applications included a certification that the filing entity was the employer of the workers and that it would pay the highest of the AEWR, the applicable prevailing wage, or the Federal minimum wage.

23. In 2018, Signet Builders, Inc. obtained at least 9 separate job orders for the admission of workers to perform construction labor at different sites in Iowa. Each of these job orders promised the wage rate of $13.42 per hour, which was the adverse effect wage rate ("AEWR") in Iowa for 2018.  Plaintiff Luna Vanegas was hired and employed pursuant to at least one of these temporary employment certifications.

24. In 2019, three of Signet's employment certification applications sought admission of 20 workers to provide labor at N5344 Crossman Road in Lake Mills, Wisconsin and County

Road South C, County Road A also in Lake Mills, Wisconsin from 1) March 15, 2019 to
May 31, 2019; 2) May 1, 2019 to January 15, 2020; and 3) May 31, 2019 to January 15,
2020. Each of these job orders promised a wage rate of $13.54 per hour, which was the 2019
AEWR for Wisconsin. Plaintiffs were hired and employed pursuant to at least one of these
job orders.

25. In 2019, Signet obtained at least 6 separate job orders for the admission of workers to
provide construction labor at sites in Kingman, Indiana or Lake Village, Indiana. Each of
these job offers promised the wage rate of $13.26 per hour, which was the 2019 AEWR for
Indiana.

26. In 2018 and 2019 Signet's H-2A applications indicated falsely that the workers would be
working directly for a "Farm Company" when, in fact, they would, in most cases, be
working for a general construction contractor, not a farm.

27. Having described the job duties as construction work, the temporary employment
certification application for Plaintiff Luna Vanegas' 2018 work in Minnesota failed to meet
either definition of "agricultural labor or services" as required under 20 C.F.R. §
655.103(c).

28. Having described the job duties as construction work, the temporary employment
certification application for Plaintiff Luna Vanegas' 2018 work in Indiana failed to meet
either definition of "agricultural labor or services" as required under 20 C.F.R. §
655.103(c).

29. Having described the job duties as construction work, the temporary employment
certification application for Plaintiffs' 2019 work in Wisconsin failed to meet either
definition of "agricultural labor or services" as required under 20 C.F.R. § 655.103(c).

30. Having described the job duties as construction work, the temporary employment

certification application for Plaintiffs' 2019 work in Indiana failed to meet either definition of "agricultural labor or services" as required under 20 C.F.R. § 655.103(c).

31. The H-2B program provides a method for employers to obtain foreign workers to perform temporary or seasonal nonagricultural jobs, such as construction work.  20 C.F.R. §§ 655.1, *et.seq*.  Because the construction work performed by Plaintiffs was non-agricultural, Plaintiffs performed the work of H-2B visa workers.

32. The federal minimum wage applicable to the construction work performed by Plaintiffs (i.e., the lowest lawful wage that could be paid to foreign visa workers for performing such construction work) was higher than the AEWR rate and the rate paid to Plaintiffs and Collective Action Members and the overtime rate for those workers should have been calculated at time and one-half that higher wage.

33. Between 2018, 2019 and 2020, Defendants obtained over 100 separate employment certifications, many with identical job descriptions, seeking admission of workers to construct livestock confinement buildings at sites in various U.S. States.  None of Defendants' employment certification applications involved activities to be performed on properties on which Signet was the owner, tenant or operator of the farm, and none of the job descriptions involved having any contact with livestock on the farms.  Many of Defendants' temporary employment certification applications and accompanying clearance orders contained identical job descriptions and requirements: "[o]n farms, unload materials, lay out lumber, tin sheets, trusses, and other components for building livestock confinement structures.  Lift tin sheets to roof and sheet walls, install doors, and caulk structure.  Clean up job sites.  Occasional use of forklift upon employer provided certification."  The remaining temporary employment certifications and accompanying clearance orders contained substantially similar job descriptions.

34. Each of the clearance orders included with the temporary employment certification

applications described in Paragraphs 22-30 contained a certification signed by Defendants that the orders described the actual terms and conditions of employment and contained all material terms and conditions of the job. These certifications are required by 20 C.F.R. § 653.501(c)(3)(viii).

35. After Defendants' temporary employment certification applications described in Paragraphs 22-30 were approved by the DOL, the Defendants submitted Petitions for Non-immigrant Workers (Form I-129) to U.S. Citizenship and Immigration Services of the Department of Homeland Security, and once these were approved, the U.S. Consulate in Monterrey, Mexico issued H-2A visas to fill the manpower needs described in the temporary employment certification applications and the accompanying clearance orders.

**Plaintiff's Recruitment and Hiring**

36. Pursuant to the approved H-2A temporary employment certification applications, Defendants recruited and hired Plaintiff Luna Vanegas to perform construction work for several years between 2004 and 2019, including 2018 and 2019. Defendants recruited and hired Plaintiff Garcia Gonzalez to perform construction work for several years between 2004 and 2019, including 2019.

37. Plaintiffs accepted Defendants' offers of employment each of these years, which terms were contained in, or included the terms of the temporary employment certification applications described in Paragraphs 19-25 by traveling to the U.S. and working for Defendants.

38. On May 30, 2018, Plaintiff Luna Vanegas was issued an H-2A visa to work for Signet Builders, Inc. in Iowa for the 2018 season.  Plaintiff Luna Vanegas entered the U.S. shortly thereafter and commenced employment with Defendants in or around June 2018 and continued through December 2018.

39. On March 29, 2019, Plaintiff Luna Vanegas was issued an H-2A visa to work for Signet

Builders, Inc. in Wisconsin and in Indiana for the 2019 season. Plaintiff Luna Vanegas
entered the U.S. shortly thereafter and commenced employment with Defendants in or
around April 2019 and continued through December 2019.

40. During 2018 Defendants assigned Plaintiff Luna Vanegas to work in Minnesota and
Indiana for Signet Construction, Inc. and possibly other companies, including Signet
Construction, LLC. In 2019 Defendants assigned him to work in Wisconsin for Signet
Construction, Inc. and Signet Construction, LLC and possibly other companies,
including Northridge Construction, Inc.

41. On April 1, 2019, Plaintiff Garcia Gonzalez was issued an H-2A visa to work for Signet
Builders, Inc. in Wisconsin and in Indiana for the 2019 season. Plaintiff Garcia Gonzalez
entered the U.S. shortly thereafter and commenced employment with Defendants from in or
around April 2019 through December 2019. Defendants assigned him to work for Signet
companies including, on information and belief, Signet Builders, Inc., Signet Construction,
Inc., and Northridge Construction, Inc, and possible other companies.

## Plaintiffs' Employment with Defendants

42. Plaintiff Luna Vanegas was employed by Defendants from approximately June 2018 through
December 2018, and from approximately April 2019 through December 2019.

43. Plaintiff Garcia Gonzalez was employed by Defendants from approximately April 2019
through December 2019.

44. Plaintiffs' job assignments for the duration of their employment with Defendants consisted
exclusively of construction duties, as set forth in Signet's temporary employment
certifications and accompanying job orders. Plaintiff Luna Vanegas received $16.00 per
hour for his work in Wisconsin and Indiana in 2019 and in Iowa in 2018. Plaintiff Garcia
Gonzalez received the applicable AEWR per hour for his work: $13.54 per hour in

Wisconsin in 2019 and $13.26 per hour in Indiana in 2019.

### a. *Plaintiffs and Prospective Collective Action Members Performed Non-Agricultural Work in All Workweeks*

45. Plaintiffs and the Prospective Collective Action Members were assigned job duties as described in Signet's temporary employment certifications and accompanying job orders. Consistent with those job descriptions, Plaintiffs and Prospective Collective Action Members never had any contact with the livestock being raised on the various farms where their construction work was performed.  Signet was not the owner, tenant or operator of any of the farms on which Plaintiffs and Prospective Collective Action Members worked.

46. During each workweek they worked for Defendants, Plaintiffs and Prospective Collective Action Members were employed exclusively in non-agricultural work within the meaning of the FLSA, 29 U.S.C. §203(f).  The work performed by Plaintiffs and Prospective Collective Action Members, as described in Defendants' clearance orders, was

neither performed in the employment of a farmer nor was it performed incidentally to—or in conjunction—with the farming operations of any farmer.

47. During each workweek they worked for Defendants, Plaintiffs were employed exclusively in non-agricultural work within the meaning of the Internal Revenue Code (IRC) 26 U.S.C. § 3121(g).  Defendants were not the owner, tenant or operator of any farm on which Plaintiffs worked.

### b. *Defendants Failed to Pay Overtime Wages*

48. While employed by Defendants in 2018, 2019, 2020, 2021 or 2022 Plaintiffs and Prospective Collective Action Members routinely worked more than 40 hours per week.

49. Although Plaintiffs and Prospective Collective Action Members performed exclusively non-agricultural work, Defendants failed to pay Plaintiffs and Prospective Collective Action

Members for all their work hours in excess of 40 per week at a rate not less than one and one-half times the lawful regular rate ("overtime premiums"), in violation of the FLSA, 29 U.S.C. § 207 and 29 C.F.R. § 780.11.

50. In 2019, Defendants failed to pay Plaintiffs any overtime premiums for their hours worked in excess of 40 per week.

51. In 2018, Defendants sporadically paid Plaintiff Luna Vanegas some overtime premiums for his hours worked in excess of 40 per week, but not for all of his hours worked in excess of 40 per week.

### c. *Defendants Failed to Pay a Reasonable Value for Plaintiffs' Labor*

52. By paying Plaintiffs the AEWR or slightly higher than the AEWR, but less than the lawful federal minimum wage applicable to foreign visa workers performing construction work, Defendants failed to pay Plaintiffs the reasonable, fair value for their construction labor.

### The Corporate and Individual Defendants

53.  Signet Builders, Inc., Signet Construction, Inc., Signet Construction, LLC, Northridge Construction, Inc. and possibly other companies were the subcontractors on the projects Plaintiff and the collective action members worked on and were responsible for, *inter alia,* assigning those workers specific tasks, supervising their work, and controlling their hours of work.

54. On information and belief Defendants Orville J. Schonefeld II, Natalie Farmer, and Rodney J. Schonefeld through their domination and control over Defendants Signet Builders, Inc., Signet Construction, Inc., Signet Construction, LLC, and Northridge Construction, Inc. acted as FLSA employers of Plaintiffs and the collective action members by, *inter alia,* exercising operational control over the Signet Companies and by making the determination

to treat Plaintiffs and the collective action members as FLSA overtime exempt, thereby

controlling their wages and causing the violation at issue in this case.

55. On information and belief, Defendants Orville J. Schonefeld II, Natalie Farmer, and Rodney

J. Schonefeld dominated and controlled the finances and business practices of Defendants

Signet Builders, Inc., Signet Construction, Inc., Signet Construction LLC, and Northridge

Construction, Inc., failed to maintain corporate formalities and the separate corporate

existence of those companies by, *inter alia,* assigning Plaintiffs and other H-2A workers to

work for the Signet Construction, LLC, Signet Construction, Inc. and Northridge

Construction, Inc. knowing that their visas only authorized them to work for Signet

Builders, by doing business in Wisconsin as Signet Construction, LLC at a time when Signet

Construction, LLC was not registered to do business in Wisconsin, by doing business in

Wisconsin under the name of Signet Construction, Inc. when Signet Construction, Inc. was

not registered to do business in Wisconsin and at a time when Signet Construction, Inc. had

dissolved itself, by doing business in Wisconsin under the name of Northridge Construction,

Inc. which has never been registered to do business in Wisconsin, and by dissolving Signet

Builders, Inc., the original defendant in this case, effective November 17, 2021 without

notifying Plaintiff or complying with the requirements of Tex. Bus. Organization Code

Chap. 11.

56. Defendants Orville J. Schonefeld II, Natalie Farmer, and Rodney J. Schonefeld also used

their dominance and control over Defendants Signet Builders, Inc., Signet Construction,

Inc., Signet Construction, LLC, and Northridge Construction, Inc. to defraud the

Department of Labor, Plaintiffs, and the collective action members by falsely representing to

them that H-2A workers would be employed by Signet Builders, Inc., when in fact the

individual Defendants intended to and did assign H-2A workers to work for other Signet

entities, and by falsely representing that Signet Builders, Inc. would be providing workers directly to "Farm Companies" when in fact they knew they were providing workers to general contractors with no farming operations.

57. The actions and false representations described in Paragraphs 55-56 were designed to insulate the individual Defendants from liability for the unlawful actions of the Signet Corporations by defrauding and misleading Plaintiffs regarding their actual employer and to defraud the Department of Labor into certifying Plaintiffs and other collective action members as FLSA exempt agricultural workers all to the personal financial benefit of the individual Defendants and to the detriment of Plaintiffs and other collective action members.

Collective Action Allegations

58. Plaintiff brings these claims on behalf of themselves and all other similarly situated persons pursuant to 29 U.S.C. § 216(b) as defined in paragraph 10 *supra.*

59. Plaintiff and Prospective Collective Action Members all performed the same or substantially similar construction job duties.  A general description of those job duties was those set out in Defendants' numerous temporary labor certifications, as described in Paragraphs 22 through 30.

60. During 2018, Defendants employed hundreds of H-2A workers, including Plaintiff Luna Vanegas, in at least eleven different U.S. states.  During 2019, Defendants employed hundreds of H-2A workers, including Plaintiffs, and assigned them exclusively non-agricultural construction work at job sites in at least ten different U.S. states.  In 2020, Defendants also employed hundreds of H-2A workers to perform non-agricultural construction labor.  Defendants failed to pay Plaintiff and other Prospective Collective Action Members for their work hours in excess of 40 per week at a rate not less than one and

one-half times their regular rate, in violation of the FLSA, 29 U.S.C. § 207 and 29 C.F.R. § 780.11.

61. Notice of the pendency of this action, and any resolution of this action can be provided to the members of the class by mail, print publication, radio, internet publication, social media postings in H-2A Facebook groups, direct messages to individuals via Facebook Messenger, Instagram and WhatsApp, and/or through nongovernmental organizations based in the employees' sending communities in Mexico.

## CLAIMS FOR RELIEF

### COUNT I

FAILURE TO PAY OVERTIME WAGES
FAIR LABOR STANDARDS ACT (FLSA)

62. In 2018, 2019, 2020, 2021 and 2022 the work performed by Plaintiffs and Prospective Collective Action Members in each and every workweek was comprised of non-agricultural work that was not exempt from the overtime hours provisions of the FLSA.

63. Defendants violated the FLSA overtime provisions, 29 U.S.C. § 207, by failing to pay Plaintiffs and Prospective Collective Action Members at one- and- one- half times their lawful regular rate of pay for their hours worked in excess of 40 in all workweeks in 2018, 2019, 2020, 2021 and 2022.

64. Defendants' violations of the FLSA's overtime provisions were willful within the meaning of the Portal-to-Portal Act, 29 U.S.C. § 255(a).  Defendants showed reckless disregard as to whether its conduct was prohibited by the FLSA.  Although Defendants were aware that they were subject to the overtime provisions of the FLSA, as demonstrated by their sporadic payment of overtime premiums to Plaintiff Luna Vanegas in 2018, Defendants failed to adequately inquire or ascertain as to whether they were obligated to pay Plaintiffs and similarly situated workers at one and one-half their regular rate for work in excess of

40 hours in a workweek.

65. As a consequence of Defendants' violations of the FLSA, Plaintiffs and Prospective

Collective Action Members are entitled to recover their unpaid overtime wages; an equal

amount in liquidated damages; costs of suit and a reasonable attorney's fee pursuant to 29

U.S.C. § 216(b).

## COUNT II

### BREACH OF CONTRACT

66. The temporary employment certification applications and accompanying clearance orders

constituted a valid employment contract between Plaintiffs and Defendants.

67. Plaintiffs did in fact perform construction work assigned to them pursuant to those

contracts.

68. Defendants' promise to pay the highest of the prevailing wage, AEWR, or federal or state

minimum wage, 20 C.F.R. § 655.120, was a term of Plaintiffs' contracts with Signet.

69. The federal minimum wage applicable to the construction work performed by Plaintiffs

was the wage applicable to H-2B construction work during the years in question—a

wage that was much higher than the AEWR and wage rates paid by Defendants.

70. By failing to pay the highest of either the AEWR, prevailing wage, or state or federal

minimum wage promised in Plaintiffs' work contracts, Defendants breached those

employment contracts for which Plaintiff is entitled to damages.

## COUNT III

### QUANTUM MERUIT

71. Defendants requested that Plaintiff Luna Vanegas perform construction labor for them

during the 2018 and 2019 seasons. Defendants requested that Plaintiff Garcia Gonzalez

perform construction labor for them during the 2019 season. Plaintiffs performed valuable

construction labor for Defendants.

72. The construction labor Defendants requested Plaintiffs perform was not agricultural labor or

services under 20 C.F.R. § 655.103(c).

73. Defendants directed Plaintiffs to perform this labor, accepted the benefit of their labor and

knew that Plaintiffs reasonably expected compensation for their labor.

74. Plaintiffs reasonably expected compensation for the construction labor they provided.

75. If the wage offered in Plaintiffs' work contracts was not the prevailing wage applicable to H-

2B construction workers, but only the AEWR or slightly more, then that wage term is illegal

and void as against public policy.   In the absence of a lawful wage term, Plaintiffs are entitled

to payment, in *quantum meruit*, for the fair and reasonable value of the construction labor they

provided, which wage cannot be less than the legal minimum wage applicable to temporary

foreign visa workers performing the non-agricultural construction work that Plaintiffs

performed.  As a consequence, Plaintiffs are entitled to recover in *quantum meruit* the

difference between the wages they were paid and the fair and reasonable value of their

services for the construction work performed.

## <u>COUNT IV</u>

### UNJUST ENRICHMENT

76.  During the 2018 and/or 2019 seasons, Defendants assigned Plaintiffs to perform construction

labor.

77. The construction labor performed by Plaintiffs was not agricultural labor or services under 20

C.F.R. §655.103(c).

78.  Plaintiffs conferred a benefit on Defendants through their long hours of construction labor, in

that Defendants obtained Plaintiffs' services for a lower pay rate than the actual value of their
services, which was much higher.

79. Defendants knew and appreciated the benefit conferred by Plaintiffs' labor through its
knowledge that the wages it paid Plaintiffs for their labor were lower than the lawful
minimum wages applicable to temporary foreign visa workers performing the construction
work that Plaintiffs performed.

80. Defendants accepted and retained the benefit under circumstances that would make it
inequitable for the Defendants to retain the benefit.

81. As a result, Defendants were enriched at the expense of Plaintiffs, and Plaintiffs are entitled to
the value of the benefit conferred, which, in this case, cannot be less than the difference
between the wages they were paid and the legal minimum wage for temporary foreign
workers performing the construction work that Plaintiffs performed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(a) Allow this action to proceed as a collective action pursuant to 29 U.S.C. §216(b) on
behalf of the members of the collective defined in paragraph 10 *supra;*

(b) Order that notice of the FLSA claim be issued in an effective manner to the members of
the putative collective action described in Paragraph 10 so that similarly-situated
employees may promptly file consent forms and join this action;

(c) Declare that Defendants have violated the overtime provisions of the Fair Labor
Standards Act, 29 U.S.C. § 207;

(d) Declare that Defendants' violation of the Fair Labor Standards Act overtime provisions
was willful, 29 U.S.C. § 255(a);

(e) Enter judgment in favor of Plaintiff and against Defendants on his FLSA overtime wage claims;

(f) Award Plaintiffs their unpaid overtime wages at the time and one half the lawful federal minimum wage applicable to temporary foreign workers performing such construction work, an equal amount in liquidated damages, costs of court, and attorney's fees;

(g) Grant judgment in favor of those similarly situated who consent to join this action on their FLSA claims and award each of them the amount of his unpaid overtime wages at the time and one half their rate of pay, along with an equal amount as liquidated damages;

(h) Enter a declaratory judgment that Defendants breached their contracts with Plaintiffs, or alternatively that the wage term in the contracts was unlawful entitling Plaintiffs to the difference between the reasonable and fair value of their services (which cannot be less than the lawful federal minimum wage applicable to temporary foreign workers performing the construction work performed by Plaintiffs) and the wages they were actually paid for each hour up to 40 hours per week as well as overtime at time and one-half that rate less any wages paid for hours worked in excess of 40 hours per week;

(i) Award Plaintiffs damages for breach of contract, *quantum meruit,* or, alternatively unjust enrichment in an amount equal to the difference between the reasonable and fair value of their services (which cannot be less than the lawful federal minimum wage applicable to temporary foreign workers performing the construction work performed by Plaintiffs) and the wages they were actually paid for each hour up to 40 hours per week as well as overtime at time and one-half that rate less any wages paid for hours worked in excess of 40 hours per week;

(j) Award Plaintiffs their costs incurred in this action;

(k)  Award reasonable attorney's fees; and

(l)  Grant such further relief as this Court deems just and appropriate.


Dated this 3rd day of August, 2023.


    Respectfully submitted,


By:  *s/Jennifer J. Zimmermann*
      Jennifer J. Zimmermann

      Jennifer J. Zimmermann, WI Bar No. 1067828
      jjz@legalaction.org
      Erica Sweitzer-Beckman, WI Bar No. 1071961
      elb@legalaction.org
      LEGAL ACTION OF WISCONSIN
      744 Williamson Street, Suite 200
      Madison, WI 53703
      Tel: 608-256-3304
      Fax: 608-256-0510

      Lorraine Gaynor, IA Bar No. AT0011144
      *Admitted Pro Hac Vice*
      lgaynor@iowalaw.org
      IOWA LEGAL AID
      1700 S. 1st Avenue, Suite 10
      Iowa City, IA 52240
      Tel: 319-351-6570

      Edward Tuddenham
      edwardtuddenham@gmail.com
      EDWARD TUDDENHAM
      42 Ave. Bosquet
      Paris
      France
      Tel: +33 68 479 8930

      *Attorneys for Plaintiff*

| 09/18/2023 | 130 | **\*\* TEXT ONLY ORDER \*\***<br>Plaintiffs motion for reconsideration, Dkt. 124 , is DENIED. Litigating the case piecemeal would be inefficient. As for plaintiffs' request for clarification, the court's September 1, 2023 order speaks for itself. Defendant Signet Builders, Inc. already filed its petition for permission to appeal with the Seventh Circuit, Dkt. 126 , so plaintiffs' motion for clarification, Dkt. 124 , is DENIED as moot.<br>Signed by District Judge James D. Peterson on 9/18/2023. (voc) (Entered: 09/18/2023) |
| --- | --- | --- |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JOSE LUNA VANEGAS, on behalf of himself and
all others similarly situated,

                             Plaintiffs,

      v.

SIGNET BUILDERS, INC.,

                             Defendant.

PRELIMINARY PRETRIAL
CONFERENCE ORDER

21-cv-54-jdp

This court held a telephonic preliminary pretrial conference on December 13, 2022. The court set the schedule for this case and advised the parties that their conduct throughout this case is governed by this pretrial conference order and attachments.

The parties and their attorneys must at all times treat everyone involved in this lawsuit with courtesy and consideration. The parties must attend diligently to their obligations in this lawsuit and must reasonably accommodate each other in all matters so as to secure the just, speedy and inexpensive resolution of each proceeding in this matter as required by Fed. R. Civ. Pro. 1. Failure to do so shall have consequences.

**1. Front-End Discovery**

The parties have agreed to exchange their Rule 26(a)(1) disclosures by January 16, 2023, and defendant will respond to plaintiff's pending discovery requests by January 31, 2023, with objections due by January 16, 2023. As stated at the pretrial conference, the court does not need to be involved in the parties' agreements regarding discovery, but it will enforce these agreements if asked to do so.

2.      **Plaintiff's Motion for Leave to Amend the Complaint: January 12, 2023**

           **Defendant's Opposition: February 13, 2023**

           **Plaintiff's Reply: February 24, 2023**

3.  **Plaintiff's Motion for conditional certification of an FLSA class: February 14, 2023**

           Briefing will proceed on a 30/14 response/reply cycle.

The parties may not modify this schedule without leave of court.

4.      **Opt-In Period Ends: September 29, 2023**

5.      **Fact Discovery Cutoff: December 15, 2023**

All fact discovery in this case must be completed by this date absent the parties' agreement to some other date.  Absent agreement of the parties or a court order to the contrary, all discovery must conform with the requirements of Rules 26 through 37 and Rule 45.

The following discovery materials *shall not* be filed with the court unless they concern a motion or other matter under consideration by the court: interrogatories; responses to interrogatories; requests for documents; responses to requests for documents; requests for admission; and responses to requests for admission.

A party need not file a deposition transcript with the court until that party is using the deposition in support of some other submission, at which time the entire deposition must be filed.  All deposition transcripts must be in compressed format. The court will not accept duplicate transcripts. The parties must determine who will file each transcript.

If there is a discovery dispute, then the parties must attempt to resolve it quickly and in good faith. A party may not file a motion regarding discovery until that party has made a good faith attempt to resolve the dispute.  If the parties cannot resolve the dispute between

themselves, then they must promptly file a discovery motion. Parties who fail to do so may not

seek to change the schedule on the ground that discovery proceeded too slowly to meet the

deadlines set in this order.

All discovery-related motions must be accompanied by a supporting brief, affidavit, or

other document showing a *prima facie* entitlement to the relief requested. Any response to a

discovery motion must be served and filed within seven calendar days of service of the motion.

Replies may not be filed unless requested by the court.  At its discretion, the court will either

decide the motion in writing or schedule a telephonic hearing.

6.    **Disclosure of Experts:        Proponent: January 26, 2024**

**Respondent: March 1, 2024**

If a party has the burden of persuasion on the issue on which the expert is offering an

opinion, then that party is the proponent and must disclose its expert(s) by the first deadline.

If a party who is the proponent on a topic does not disclose an expert on that topic, then the

party that is the respondent on that topic may not disclose an expert on that topic on the second

deadline unless it previously had alerted the proponent party prior to the proponent party's

deadline passing, or unless it obtains leave of court to do so.

All disclosures mandated by this paragraph must comply with the requirements of Rule

26(a)(2).  There shall be no third round of rebuttal expert reports.  Supplementation pursuant

to Rule 26(e) is limited to matters raised in an expert's first report, must be in writing and must

be served not later than five calendar days before the expert's deposition, or before the general

discovery cutoff if no one deposes the expert.  Any employee of a party who will be offering

expert opinions during any phase of this case must comply with the requirements of Rule

26(a)(2)(B).  Failure to comply with these deadlines and procedures could result in the court

striking the testimony of a party's experts pursuant to Rule 37. The parties may modify these deadlines and procedures only by unanimous agreement or by court order.


7.    **Motion & Brief To Decertify a Class**: **February 16, 2024**

Briefing will proceed on a 30/14 response/reply cycle.

The parties may not modify this schedule without leave of court.


8.    **Deadline for Filing Dispositive Motions**: **February 16, 2024**

Briefing will proceed on a 30/14 response reply cycle.

The parties may not modify this schedule without leave of court.

If any party files a motion for summary judgment, then all parties must follow this court's procedure governing such motions, a copy of which is attached to this order. The court will not consider any document that does not comply with its summary judgment procedure. A party may not file more than one motion for summary judgment in this case without leave of court.

Parties are to undertake discovery in a manner that allows them to make or respond to dispositive motions within the scheduled deadlines.


9.    **Settlement Letters**: **August 23, 2024**

Not later than this date, each party must submit a confidential settlement letter to the clerk of court at clerkofcourt@wiwd.uscourts.gov. The letter should set forth the terms and conditions upon which that party would settle this case. These letters will not become part of the record in this case and will not be shared with the presiding judge or opposing counsel.

The clerk of court may independently initiate settlement discussions with counsel based upon the settlement letters. A party may request mediation at any time by contacting the clerk of court via e-mail or telephone at 608-261-5795.

RA-27

10.    **Submissions for the Final Pretrial Conference: August 30, 2024**

         **Responsive Submissions: September 13, 2024**

The first date is the deadline to file and serve all Rule 26(a)(3) disclosures, as well as all motions in limine, proposed voir dire questions, proposed jury instructions, and proposed verdict forms.  All responses in opposition are due by the second date.  The format for submitting proposed voir dire questions, jury instructions and verdict forms is set forth in the Procedures Governing Final Pretrial Submissions, which is attached.

11.    **Final Pretrial Conference: September 25, 2024 at 2:30 p.m.**

Lead counsel for each party must appear in person.  Any deposition that has not been filed with the Clerk of Court by the date of the final pretrial conference shall not be used by any party for any purpose at trial.

12.    **Jury Selection and Trial: October 7, 2024 at 9:00 a.m.**

Trial shall be to a jury of eight. The parties estimate that this case will take three or four days to try.  Absent further order of this court, the issues to be tried shall be limited to those identified by the parties in their pretrial conference report to the court.

This case will be tried in an electronically equipped courtroom and the parties shall present their evidence using this equipment.  Counsel must ensure the compatibility of any of their personal equipment with the court's system prior to the final pretrial conference.

13.    **Reporting Obligation of Corporate Parties**

All parties that are required to file a disclosure of corporate affiliations and financial interest form have a continuing obligation throughout this case promptly to amend that form to reflect any changes in the answers.


Entered this 13th Day of December, 2022.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge